[Civ. No. 3629.  Second Appellate District, Division One.—March 13, 1922.]

FRANCES K. ROSS, Respondent, v. KEATON TIRE & RUBBER COMPANY (a Corporation), Appellant.

[1] Landlord and Tenant—Lease of Lot and Building to be Constructed—Provision as to Cost of Building—Construction of Instrument.—A lease of a lot with a building to be erected thereon "to cost approximately $21,000" in consideration of the payment as rental of the sum of six per cent net on the valuation of the lot and eight per cent on the cost of the building, while not restricting the cost to a sum not in excess of $21,000, was intended as an approximate estimate, and the construction of a building at a cost of more than fifty per cent in excess of $21,000 was not in the contemplation of the parties.

[2] Id. — Cost in Excess of Specified Amount — Acceptance of Building—Amount of Rental—Covenant not Waived.—Where the provision as to the cost of a building to be erected on demised premises was inserted solely for the purpose of fixing the amount of rent which the lessee should pay, the acceptance of the building and entry and occupation by the lessee did not constitute a waiver of the covenant or of the right to insist upon a rental based upon any less sum than actual cost.

APPEAL from a judgment of the Superior Court of Los Angeles County.  J. P. Wood, Judge.  Reversed.

The facts are stated in the opinion of the court.

Devoto, Richardson & Devoto and O'Melveny, Millikin & Tuller for Appellant.

Frank G. Tyrrell for Respondent.

SHAW, J.—Action in unlawful detainer. Judgment went for plaintiff, from which defendant has appealed.

Plaintiff was the owner of a vacant lot in Los Angeles and, by a lease prepared by her and executed by the parties on November 29, 1919, she let and demised the same, with a two-story building to be erected thereon, to defendant for a term of ten years from the completion of the building. The portion of the lease pertinent to the question presented is as follows:

"The party of the first part [plaintiff] does hereby lease to the party of the second part [defendant] . . . her lot, 1337 S. Flower St., Los Angeles, California, with a two-story building to be erected thereon and to cost approximately Twenty-one Thousand Dollars ($21,000.00). In case of building being damaged or destroyed by fire, or other causes, party of the first part is to replace or build, as may be the case, as soon as possible, and party of the second part is to continue the lease for the full term of ten years. . . . Said second party agrees to pay as rent for said premises the sum of 6% net on Thirty Thousand Dollars ($30,000.00), valuation of lot, 8% on cost of buildings, and to pay all taxes, . . . The object of this lease is to absolutely net the owner 6% on lot and 8% on cost of building."

About February 1, 1920, plaintiff commenced the erection of the building, in the design of which she selected an architect, who likewise, as plaintiff's agent, acted as superintendent of construction and the letting of the several contracts therefor, for all of which she expended the sum of $31,837, which the court found was the reasonable cost of the building, which was completed about June 20, 1920, at which time defendant, with plaintiff's consent, took possession thereof and has continued ever since to occupy the same. As payment of the monthly rental, defendant tendered to plaintiff an amount equal to six per cent net on the value of the lot and eight per cent net on $21,000, which it claimed was the amount of rent it was required to pay under the terms of the lease. Plaintiff refused to accept this tender and demanded a rental on the building of eight per cent based upon the cost thereof as found by the court, plus six per cent on the agreed value of the lot, and upon defendant's refusal to pay the same she, on

September 15, 1920, served upon defendant a notice to pay the rent within three days or surrender possession of the premises. This action followed defendant's failure to comply with such demand.

The solution of the question presented depends upon an interpretation of the provisions of the lease above quoted, wherein, among other things, it was expressly stipulated that the building which plaintiff was to erect upon the lot, and upon the cost of which defendant was to pay eight per cent, was "to cost approximately $21,000." Section 13 of the Civil Code provides that words are to be construed "according to the context and the approved usage of the language." The word "approximate" is defined "to come close to, as in quality, degree or quantity; approach closely without coinciding with exactly," or reaching the specified amount or quantity. (*Bloomington Canning Co.* v. *Union Can Co.*, 94 Ill. App. 62.) The adverb "approximately" has a different meaning. It is defined as "very nearly but not absolutely"; it is synonymous with and means "about," and is used in the sense of an estimate merely, meaning more or less, but about and near the amount, quantity or distance specified.

[1] In the absence of other evidence, and having reference to the context and subject matter of the contract, we think it clearly appears that the term "to cost approximately $21,000" was by the parties employed in the sense thus defined; that is, as an approximate estimate, whether more or less, but about or near the sum specified; and not in the sense, as claimed by appellant, of restricting the cost to a sum not in excess of $21,000, which might be the case if the clause read "to approximate a cost of $21,000," the meaning of which would be to approach closely, but not coinciding with or reaching the sum specified. On the other hand, and in the absence of evidence affecting the interpretation, the contract cannot be construed to mean that the parties contemplated the construction of a building to cost, as found by the court, more than fifty per cent in excess of that agreed upon. Certainly plaintiff could not have insisted, over defendant's objection, that a building costing $10,000 would have constituted a compliance with her contract to erect a building to cost approximately $21,000. The case of *Vaughan* v. *Ford,* 162

Mich. 37 [127 N. W. 280], involved facts very similar to
the instant case.  In that case a contention arose over a
change made in the plans for the doing of concrete foun-
dation work for a structure, in accordance with which sub-
stituted plan the contractor, upon representations of the
owner that the cement work called for by such change
would be approximately the same as under the original
plan, agreed to do the work for the original price.   The
proof showing that the plan as changed required an excess
of 1,049 cubical feet in a total of 170,837 cubical feet, the
court held that the work called for by the substituted plan
was not approximately the same as that under which the
contract was let; the reason assigned therefor being that
the difference in the two plans was a matter of mathe-
matical computation, and, hence, since the substituted plan
was in excess of that called for by the original specifi-
cations to the extent of 1,049 cubical feet, the contractor
was entitled to compensation therefor.  In other words, the
difference, though appearing small, was so great that it
could not be said to be approximately the same.   In de-
ciding the case the court said:  "The word 'approximately'
is to be construed with reference to the subject matter.  An
estimate of the cost of constructing a building, where un-
certain factors enter into the estimate, might well be held
to be approximately correct, although the actual cost ex-
ceeded the estimated cost by more than the difference in
this case."   In the instant case, no reason occurs to us
why, at the time of the execution of the lease, the cost
of the building which plaintiff proposed to erect was not
a matter susceptible of an accurate estimate and the con-
struction thereof let to a competent and responsible con-
tractor for a definite and certain sum.   However this may
be, and conceding such was not the case and that uncertain
factors entered into the estimate, it cannot, we think, be
said that $31,837 is approximately $21,000.

The record is brought up in typewritten form and,
though no reference is made thereto in the briefs of the
parties, it appears from an examination of the same that
soon after the execution of the lease plaintiff began the
preparation of plans for the building, which, though under
no obligation so to do under the lease, she submitted to de-
fendant who suggested certain changes therein which it is

alleged in the complaint were adopted by plaintiff, the effect of which was to increase the cost of the building to the total sum of $31,837. This allegation was denied by defendant, but, assuming that there might be evidence of acts of defendant which would render it liable for increased cost of the building due to its requests, there is no finding upon such issue, other than the following: ''That said building was erected according to plans and specifications suggested and approved by defendant and changed from time to time at its special instance and request; that defendant was fully informed and knew at all times the cost of said building.'' While this finding is responsive to the issue as to whether or not defendant requested changes in the plans, it does not appear therefrom that such changes added one cent to the cost of the building. On the contrary, the effect thereof, as claimed by appellant, might have been to reduce the cost. Neither is there any evidence, so far as we are advised, as to the amount of such increased cost, if any, without which the trial court was not warranted in holding defendant liable therefor.

There appears in the typewritten transcript a number of letters, introduced *en masse* and marked Exhibit ''A,'' to which no reference is made in their briefs by either of the parties. Some of these letters are to and from parties whose connection with the transaction is not made to appear, and while some of them seem to have reference to the matter in controversy, they are unsigned. It does appear, however, that prior to the commencement of construction differences existed between plaintiff and defendant as to the amount of rent which the latter should pay under said lease and the cost of the building, which were made the subject of correspondence. That defendant was informed by plaintiff on January 29, 1920, that the building, instead of costing $21,000, would cost $25,000, and that upon ascertaining the exact cost she would send defendant a new lease for execution, which she did in fact do. It was not accepted by defendant who, prior to the letting of the contract, replied to her letter, stating in effect that it stood upon the terms of the lease, but further said: ''Under present conditions it does not seem to be the best time to build, and if you feel that you do not want to carry out the terms of the present lease as signed by you,

we believe we would not insist so as to cause you a big loss, and would be inclined to favor you with a release from the present contract.'' Now, while clearly of the opinion that appellant is in error in insisting that the lease should be construed as restricting the cost of the building upon which the rental is fixed at eight per cent upon an amount not in excess of $21,000, but that such figure was intended as an estimate only and might be either more or less than said sum, we are likewise of the opinion that the record as presented is insufficient to warrant the conclusion of the court in fixing the sum of $31,837 upon which defendant should be required to pay eight per cent. Neither is there in the muddled record presented to this court any evidence upon which we can say the parties placed a practical construction upon the terms of the indefinite provision of the lease.

Appellant invokes the rule that a written contract should, in case of doubt, be interpreted against the party who has drawn the contract; in this case, the plaintiff. Under our opinion, however, since we hold that it was not the intention of the parties under the terms of the written contract to limit the construction of the building to a cost of $21,000, but that they contemplated the sum so specified merely as an estimate and that the cost might vary more or less therefrom, such rule is not applicable. It is clear that the building cost more than $21,000; it is likewise, we think, clear that defendant contemplated the possibility of paying the stated percentage on more than said sum. But, while this court upon the record presented is of the opinion that defendant is not chargeable with rent at eight per cent upon the cost of the building as found by the court, it is unable, upon the evidence presented and want of sufficient findings, to say just what it should be.

[2] We find no merit in respondent's contention that, regardless of the cost of the building, defendant, by entry and occupation of the same, waived its right to insist upon a rental based upon any less sum than its actual cost. There is nothing in the contract by which plaintiff was limited as to the amount which she might, at her option, expend in the construction of the building. The provision as to cost was inserted for the purpose of fixing the amount of rent which defendant should pay. If it be true that

plaintiff expended a greater sum in the erection of the building than that upon which, under a proper interpretation of the contract, defendant was required to pay eight per cent as rental, its acceptance of the building did not constitute a waiver of the covenant. It is quite true, as held in *Weed* v. *Lindsay & Morgan,* 88 Ga. 686 [20 L. R. A. 33, 15 S. E. 836], that if plaintiff had erected a building at a cost of $10,000 only and defendant had accepted the same, it would have constituted a waiver as to the erection of a building costing $21,000, upon which, however, under the terms of the lease, it could only have been required to pay rent upon the actual cost. While no restrictions are imposed upon plaintiff as to the amount which she might expend in the erection of the building, nevertheless the amount of rent which she could exact from defendant as tenant was restricted to a certain percentage upon an amount to be ascertained under a proper interpretation of the lease.

The judgment is reversed and a new trial ordered, if the parties are so advised, wherein, if had, the trial court is directed to construe the clause specifying a building "to cost approximately $21,000" as an agreed estimate of such cost, the variation from which should be determined upon proper and competent evidence received touching the surrounding circumstances of the transaction; practical construction of the lease by the parties, if any; amount of increased cost of the building due to defendant's acts in changing the plans and specifications, if any, and for which, under the circumstances made to appear, it should be required to respond, and such other evidence as the court may deem proper.

Conrey, P. J., and James, J., concurred.